IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION



UNITED STATES OF AMERICA,
*ex rel.*, KATHI HOLLOWAY

3 : 10CV1875

                                    PLAINTIFF

V.                                    CIVIL ACTION NO. _____

HEARTLAND HOSPICE, INC.;
HCR MANORCARE, INC.; and
THE CARLYLE GROUP

JUDGE CARR

                                    DEFENDANTS

**FILED UNDER SEAL**

MAG. JUDGE ARMSTRONG

## COMPLAINT

*Qui tam* relator, Kathi Holloway, by her undersigned attorneys, hereby alleges as follows:

1.  This is a civil action brought on behalf of the United States of America against Heartland Hospice, Inc. ("Heartland"), HCR ManorCare, Inc. ("HCR"), and The Carlyle Group (collectively referred to as "Defendants") to recover damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-3733, as amended by the False Claims Act Amendments of 1986, the  Fraud Enforcement and Recovery Act of 2009, and the Patient Protection and Affordable Care Act of 2010.  Relator Kathi Holloway ("Holloway"), acting on behalf of the United States, brings this civil action under the *qui tam* provisions of the False Claims Act, as amended in 1986.

## Venue and Jurisdiction

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345 and 31 U.S.C. §§ 3730(b) and 3732(a).

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and 31 U.S.C. § 3732(a). Defendants, or certain of them, were doing business in this district during the relevant time period, and the claims set forth in this Complaint arose, at least in part, in this district.

## The Parties

4.  *Qui tam* relator Holloway is a United States citizen and a resident of the State of Kansas. Holloway has worked as a Regional Hospice Consultant for Heartland Hospice since November 2009.

5.  Defendant Heartland Hospice is the third largest provider of hospice services in the United States with location in more than 110 cities in 32 states. Heartland is based in Toledo, Ohio and is owned by defendant HCR ManorCare, Inc.

6.  Defendant HCR ManorCare, Inc. is a large health care conglomerate based in Toledo, Ohio. HCR owns Heartland Hospice. HCR was purchased by defendant The Carlyle Group in or around December 2007.

7.  Defendant The Carlyle Group is a global asset manager with over $90.5 billion under management. The Carlyle Group purchased defendant HCR ManorCare, Inc. in or around December 2007.

2

## The Law

8. The False Claims Act (FCA) provides in pertinent part that:

> (1) Any person who (A) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (C) conspires to commit a violation of [the Act]; ... or (G) knowingly makes, uses, or causes to be made or used , a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,
>
> * * *
>
> is liable to the United States Government for a civil penalty of not less than [$5,500 and not more than $11,000], plus 3 times the amount of damages which the Government sustains because of the act of that person....
> (b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud.

31 U.S.C. § 3729.

## Medicare and Hospice

9. The United States, through the Department of Health and Human Services ("HHS") and its component agency, the Centers for Medicare and Medicaid Services ("CMS"), administers the Medicare Part A and Medicare Part B programs.  Generally,

hospitals are reimbursed through the Medicare Part A program, and physicians are reimbursed through the Medicare Part B program. The United States also pays for health care services through numerous other health care programs, including Medicaid and CHAMPUS. Hospice services are reimbursed through Medicare Part A.

10. Hospitals, physicians, and hospice providers who participate in the Medicare program, as well as other federal health care programs, are required to enter into contracts or "provider agreements" with HHS. Under the terms of these provider agreements, hospitals, physicians, hospice providers, and other participating health care providers certify that they will comply with all laws, regulations, and guidance concerning proper practices for Medicare providers. Compliance with these provider agreements is a condition for participation in, and receipt of payments from, the Medicare program.

11. A "hospice" is a public agency or private organization that is primarily engaged in providing care to terminally ill individuals, meets the conditions of participation for hospices, and has a valid Medicare provider agreement. Hospice care is an approach to caring for terminally ill individuals that stresses palliative care (relief of pain and uncomfortable symptoms), as opposed to curative care. In addition to meeting the patient's medical needs, hospice care is intended to address the physical, psychological, and spiritual needs of the patient, as well as the psychological needs of the patient's family and/or caregiver. The emphasis of the hospice program is on keeping the hospice patient at home with family and friends as long as possible.

4

12. In order to be eligible to elect hospice care under Medicare, an individual must be entitled to Medicare Part A and be certified as being "terminally ill." 42 C.F.R. § 418.20. To be considered "terminally ill" for purposes of qualifying for hospice services reimbursed by Medicare, a physician must certify that the individual's prognosis is for a life expectancy of 6 months or less if the terminal illness runs its normal course. 42 C.F.R. § 418.22. When submitting claims to Medicare Part A for hospice reimbursement, hospice providers certify that the patients to whom hospice services were delivered were eligible for Medicare's hospice benefit.

### Defendants' Scheme

13. Defendants have engaged in a corporate-wide pattern of conduct that has resulted in the submission of thousands of false claims and statements to the United States. As a result of this conduct, Defendants have received from the United States millions of dollars to which they were not entitled.

14. Defendants routinely admit into hospice patients who are not eligible to receive hospice benefits from Medicare Part A. In furtherance of this scheme, Defendants falsify patients' life expectancy in order to "qualify" those patients for hospice reimbursement from Medicare, maintain patients on hospice after their medical condition has stabilized rather than discharging them from hospice as required by Medicare regulations, and exaggerate patients' "signs and symptoms" in order to "qualify" them for hospice reimbursement from Medicare. In those cases where a non-

5

qualified hospice patient is discharged from Heartland's hospice program, Heartland either does not refund to the Government all of the money paid to Heartland by Medicare for those non-qualified patients or refunds only a small portion of what has been paid by Medicare.

15.  Heartland's auditors have been instructed to review only the most recent benefit period for audited patient files rather than the entire period of treatment by Heartland.  In those instances where it is determined that a non-qualifying patient should be removed from hospice and money refunded to the Government, Heartland refunds only the amount paid for the last benefit period, that being the only period audited, rather than the amount paid by Medicare for the entire length of time Heartland has been receiving payment for that patient from Medicare.

16.  In furtherance of their scheme to defraud Medicare, Defendants provide financial incentives to Heartland "marketers" and administrators to admit patients into hospice regardless of whether they actually qualify for hospice benefits under the Medicare program and to keep those patients in hospice care regardless of whether they actually qualify for hospice benefits under the Medicare program.  Heartland Account Liaisons are terminated if they do not reach a required quota of new hospice admissions.

17.  Pursuant to her responsibilities as Regional Director of Operations, Relator has reviewed the charts of numerous Medicare beneficiaries receiving hospice services from Heartland.  Relator's review revealed that many patients enrolled with Heartland

6

were not eligible for the Medicare hospice benefit because their condition was "chronic" rather than "terminal."

18. The patients identified in Exhibit "A", attached hereto, are among the Heartland patients who did not qualify for hospice care under the Medicare program. Each and every claim submitted to Medicare by Defendants for hospice services provided to these patients was a false claim submitted in violation of the False Claims Act. Thousands of additional false claims were submitted by Defendants for other patients who were not qualified for Medicare's hospice benefit.

19. On January 15, 2009, the United States Department of Justice announced that it had entered into a settlement with SouthernCare Hospice pursuant to which SouthernCare paid $24,700,000 to settle allegations that it submitted hundreds of false claims to Medicare seeking reimbursement for patients treated at its hospice facilities who did not qualify for Medicare's hospice benefit. Upon learning of the fact that SouthernCare paid the Department of Justice nearly $25 million to resolve allegations of conduct very similar to the conduct of Defendants alleged herein, Defendants together decided to discharge hundreds of Heartland hospice patients who did not qualify for hospice services under Medicare. In the weeks following the announcement of the SouthernCare settlement, Defendants discharged hundreds of hospice patients on whose behalf Defendants improperly were paid millions of dollars by Medicare despite the fact that these patients did not qualify for Medicare's hospice benefit. Defendants did not

7

disclose to the Government the reason for this mass discharge of non-qualified hospice patients, nor did Defendants refund to the Government the millions of dollars they had fraudulently obtained from the Medicare program as a result of billing Medicare for hospice services allegedly provided to these patients.

20. As a result of the conduct of Defendants alleged herein, Defendants submitted thousands of false claims to the United States. As part of the scheme alleged herein, Defendants made thousands of false statements regarding the true condition of its hospice patients and the nature of the services provided to its patients in order to get false or fraudulent claims approved by the Government. These false representations were material to the decision of the Government to pay the false claims submitted by Defendants. Consequently, Defendants received millions of dollars from the United States to which they were not lawfully entitled.

<h3 align="center">COUNT I</h3>

Claim By and on Behalf of the United States under the False Claims Act
(Presenting False Claims)

21. Plaintiff realleges and incorporates by reference paragraphs 1 through 20 as though fully set forth herein.

22. This is a claim under the False Claims Act, 31 U.S.C. §§ 3729-33, as amended.

23. The Plaintiff/Relator, Kathi Holloway, has standing to maintain this action by

8

virtue of 31 U.S.C. §3730(b).

24. By virtue of the acts described herein, Defendants knowingly presented false or fraudulent claims for payment, or knowingly caused false or fraudulent claims for payment to be presented, to officials of the United States Government in violation of 31 U.S.C. § 3729(a)(1)(A), as amended.

25. By virtue of the false claims presented or caused to be presented by Defendants, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT II

Claim By and on Behalf of the United States under the False Claims Act (False Records or Statements)

26. Plaintiff realleges and incorporates by reference paragraphs 1 through 20 as though fully set forth herein.

27. This is a claim on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-33, as amended.

28. The Plaintiff/Relator, Kathi Holloway, has standing to maintain this action by virtue of 31 U.S.C. §3730(b).

29. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid

9

and approved by the Government, Defendants caused to be made or used false records or statements to get false or fraudulent claims paid or approved by an agency of the United States Government, in violation of 31 U.S.C. § 3729(a)(1) (B).

30.  By virtue of, and as a result of, the false records and statements used to get false claims paid by the Government, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT III

Claim By and on Behalf of the United States under the False Claims Act
(Conspiracy to Submit False Claims)

31.  This is a claim under the False Claims Act,  31 U.S.C. §§ 3729-33, as amended.

32.  Plaintiff realleges and incorporates by reference paragraphs 1 through 20 as though fully set forth herein.

33.  By reason of the foregoing with respect to Defendants' fraudulent scheme, Defendants conspired together to defraud the government in order to get false or fraudulent claims paid by Medicare, in violation of 31 U.S.C. § 3729(a)(1)(C), as amended.  In furtherance of the conspiracy, Defendants acted to affect the objects of the conspiracy alleged herein.

34.  By virtue of the false claims presented or caused to be presented by

10

Defendants pursuant to this conspiracy, and by virtue of the false statements made in furtherance of this conspiracy, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT IV

Claim By and on Behalf of the United States under the False Claims Act
(Wrongfully Retaining Government Funds)

35. This is a claim under the False Claims Act, 31 U.S.C. §§ 3729-33, as amended.

36. Plaintiff realleges and incorporates by reference paragraphs 1 through 20 as though fully set forth herein.

37. By reason of the foregoing with respect to Defendants' fraudulent scheme, Defendants knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government, in violation of 31 U.S.C. § 3729(a)(1)(G), as amended.

38. By virtue of the fact that Defendants knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief

11

as appropriate.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in favor of the United States:

1.     On Counts I - IV, under the False Claims Act, against Defendants for treble the amount of the United States' actual damages (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

2.     For all costs of this civil action; and

3.     For such other and further relief as the Court deems just and equitable.

WHEREFORE, relator Kathi Holloway demands and prays that judgment be entered in her favor:

1.     On Counts I - IV, under the False Claims Act, for a percentage of all civil penalties and damages obtained from Defendants pursuant to 31 U.S.C. § 3730, reasonable attorney's fees, and all costs incurred against Defendants; and

2.     Such other relief as the Court deems just and proper.

12

Respectfully submitted,

J. Cliff Johnson II (Mississippi Bar #9383)

ATTORNEYS FOR RELATOR KATHI HOLLOWAY

Pigott Reeves Johnson, P.A.
775 N. Congress Street
Post Office Box 22725
Jackson, Mississippi 39225-2725
Telephone:  (601) 354-2121
Facsimile: (601) 354-7854

13